# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,            )
                                                                  )
                              Plaintiff,            )        Case No. 2:06-cr-00376-JCM-GWF
                                                                  )
vs.                                                        )        **ORDER**
                                                                  )
MARK A. LOBELLO,                          )        **Petition for Permission to Practice - #31**
                                                                  )
                              Defendants.       )        **Motion to Disqualify Oscar Stilley, Esq.**
_____)        **- #35**

        This matter is before the Court on Oscar Stilley's Verified Petition for Permission to Practice In

This Case Only By Attorney Not Admitted to the Bar of This Court and Designation of Local Counsel

(#31); the Government's Motion to Disqualify Oscar Stilley, Esq. From Pro Hac Vice Representation

(#35), filed August 16, 2007; Defendant's Response to Government's Motion to Disqualify Oscar

Stilley, Esq. From Pro Hac Vice Representation (#42), filed on September 7, 2007; and the

Government's Reply to Defendant's Response to  Government's Motion to Disqualify Oscar Stilley,

Esq. From Pro Hac Vice Representation (#46), filed September 13, 2007.  The Court conducted a

hearing in this matter on September 18, 2007.

## BACKGROUND

        On November 14, 2006, an Indictment (#1) was filed against Defendant Mark A. LoBello, a

Nevada attorney, charging him with five counts of tax evasion in violation of 26 U.S.C. § 7201.

Defendant LoBello was initially represented in this case by attorney Joel Hansen, Esq.  On February 21,

2007, Defendant LoBello filed a Substitution of Attorney (#24), executed by himself and Mr. Hansen,

1  substituting Defendant LoBello, in proper person, as his counsel in this case.  The Court approved the

2  substitution of attorney by order (#25) entered on February 22, 2007.  On August 1, 2007, Attorney

3  Oscar Stilley, Esq. filed a Verified Petition for Permission to Practice In This Case Only By Attorney

4  Not Admitted to the Bar of This Court and Designation of Local Counsel (#31).  In his Petition, Mr.

5  Stilley certified upon affirmation that he is a member in good standing of the State Bar of Arkansas and

6  has been admitted to practice in the Western and Eastern Districts of Arkansas, the Central District of

7  Illinois, the Northern District of Oklahoma, the Northern District of Florida, and before the 4th, 6th, 7th,

8  8th, 9th, 10th, and 11th Circuit Courts of Appeals.  *Verified Petition* (#31), pp. 2, 6.  The Verified Petition

9  designates Defendant LoBello as the associate resident counsel in this case.  *Id.,* p. 4.

10  In its Motion to Disqualify (#35), the Government notes that the Sixth Circuit, in an unpublished

11  opinion, upheld an order by the United States District Court for the Western District of Michigan

12  denying Mr. Stilley *pro hac vice* admission, *Stilley v. Bell*, 155 Fed. Appx. 217, 224 (6th Cir. 2005), and

13  that the United States District Court for the District of Hawaii also affirmed a magistrate judge's order

14  disqualifying Mr. Stilley from *pro hac vice* representation.[1]  The Government states that both courts

15  noted Mr. Stilley's long history of state bar disciplinary problems in Arkansas which are also set forth in

16  Mr. Stilley's attachments and substitute attachments to his Verified Petition (#31 and #34) filed with

17  this Court.

18  The Government also stated that Mr. Stilley is currently suspended, or soon to be suspended,

19  from the practice of law in Arkansas based on a June 21, 2007 decision by the Arkansas Supreme Court

20  which affirmed a decision by the professional conduct committee of that state suspending Mr. Stilley

21  from the practice of law for a period of six months.  *See Stilley v. Supreme Court Comm. on Prof'l*

22  *Conduct*, No. 06–972 (Ark. filed June 21, 2007); *See also Verified Petition* (#31), p. 9.[2]  As stated in his

23  Verified Petition, Mr. Stilley petitioned the Arkansas Supreme Court for rehearing of the order

24  affirming his suspension from the practice of law. *Verified Petition* (#31), p. 9.  After the motion to

25

26  [1]*See United States v. Bennett*, 2006 WL 2793170 (D. Hawaii 2006).

27

28  [2]A copy of the Arkansas Supreme Court's opinion is attached to *Defendant's Response (#42),* as *Exhibit "5."*

1   disqualify and Defendant's response were filed in this case, however, the Arkansas Supreme Court

2   denied Mr. Stilley's petition for rehearing and affirmed his suspension from the practice of law on

3   September 6, 2007.  *Reply* (#46), *Exhibits "1" and "2".*   On September 13, 2007, the Arkansas

4   Supreme Court stayed the enforcement of the suspension pending Mr. Stilley's petition for certiorari to

5   the United States Supreme Court. *Id., Exhibit "4".*  In addition to the presently stayed suspension

6   order, the Government notes that Mr. Stilley's verified petition lists two other professional conduct

7   matters that are currently pending against him in Arkansas.

8           In Defendant's Response (#42), Mr. Stilley argues that this Court should not rely on or accord

9   any weight to the Arkansas suspension order on the grounds that the Arkansas disciplinary proceedings

10  violated his due process rights under the United States Constitution.  According to the documents and

11  information provided to this Court, the suspension order arose from a brief that Mr. Stilley filed in the

12  Arkansas Supreme Court relating to a ballot initiative affecting judicial salaries, including the salaries

13  of state supreme court justices, in which Mr. Stilley argued that the justices should recuse themselves

14  because of a conflict of interest.  In an opinion issued on May 17, 2002 in *White v. Priest*, 73 S.W.3d

15  572 (Ark. 2002), the Arkansas Supreme Court cited Mr. Stilley's intemperate and disrespectful

16  statements toward the Court and referred him to the Arkansas Professional Conduct Committee for

17  possible discipline.  In the subsequent disciplinary proceedings, Mr. Stilley attempted to subpoena state

18  supreme court justices to appear as witnesses at the disciplinary hearing.  The Arkansas Supreme Court

19  quashed the subpoenas.   The Professional Conduct Committee subsequently found that Mr. Stilley

20  violated the rules of professional conduct and suspended him from the practice of law for six months.

21  On June 21, 2007, the Arkansas Supreme Court upheld the decision of the Professional Conduct

22  Committee that Mr. Stilley violated the rules of professional conduct and the imposition of the six

23  month suspension.

24          Mr. Stilley argues that the Arkansas Supreme Court justices acted as both accusers and the

25  ultimate judges in reviewing the committee's decision to suspend him from the practice of law and in

26  quashing the subpoenas for their appearances at the disciplinary hearing.  Mr. Stilley also challenged the

27  disciplinary proceedings on the grounds that there was not adequate notice that the alleged conduct,

28  intemperate and disrespectful statements in his brief, violated the Arkansas rules of professional

1  conduct.  The Arkansas Supreme Court addressed and rejected these arguments in its June 21, 2007

2  Opinion affirming Mr. Stilley's suspension.  *See Stilley v. Supreme Court Committee on Professional*

3  *Conduct*, No. 06-972 (filed June 21, 2007).  As noted above, the Arkansas Supreme Court subsequently

4  denied Mr. Stilley's request for rehearing and recusal of the justices.  It appears that Mr. Stilley is

5  pursuing this matter further through a petition for writ of certiorari to the United States Supreme Court.

6                            **DISCUSSION**

7        Rule LR IA 10-2 of the Local Rules of Practice for the United States District Court for the

8  District of Nevada provides that an attorney who is not a member of the bar of this court and who has

9  been retained or appointed to appear in a particular case may do so only with permission of the court.

10  The rule provides that an attorney may submit a verified petition to practice in a particular case in this

11  district if certain conditions are met, including that the attorney is a member in good standing and

12  eligible to practice before the bar of any jurisdiction of the United States.  *See LR IA 10-2(a)(5).*  The

13  verified petition is required to identify the court or courts to which the attorney has been admitted to

14  practice and the date of such admission and that the attorney is a member in good standing of such court

15  or courts and is not currently suspended or disbarred in any court.  *LR IA 10-2(b)(2)(3) and (4).*  The

16  Rule further provides that the granting or denial of a petition to practice under the rule is discretionary.

17  *LR IA 10-2(i).*

18        Although the Government's Motion (#35) is styled as a "motion to disqualify," Mr. Stilley has

19  not yet been admitted to practice *pro hac vice* in this case.  The issue before the Court, therefore, is not

20  whether Mr. Stilley should be disqualified from representing the Defendant, but rather whether his

21  petition to be admitted to practice in this case should be granted or denied.  As stated herein, this

22  distinction is not without difference.

23       The court's discretion to deny a petition for *pro hac vice* representation in a criminal case is

24  circumscribed by the defendant's Sixth Amendment rights to be represented by otherwise qualified

25  counsel of his own choice.  *See United States v. Gonzalez-Lopez*, 126 S.Ct. 2557, 2561(2006).  In

26  *United States v. Walters*, 309 F.3d 589 (9th Cir. 2002), the Ninth Circuit states in this regard:

27          "A defendant's right to the counsel of his choice includes the right to have
                an out-of-state lawyer admitted *pro hac vice*." *United States v. Lillie,* 989

28                F.2d 1054, 1056 (9th Cir.1993) (citation omitted), *overruled on other*

grounds by *United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999).  "[A] decision denying a *pro hac vice* admission necessarily implicates constitutional concerns."  *Panzardi-Alvarez v. United States*, 879 F.2d 975, 980 (1st Cir.1989) (citation omitted).  The Sixth Amendment grants criminal defendants a qualified constitutional right to hire counsel of their choice but the right is qualified in that it may be abridged to serve some "compelling purpose."  *United States v. D'Amore*, 56 F.3d 1202, 1204 (9th Cir.1995), *overruled on other grounds by United States v. Garrett*, 179 F.3d 1143 (9th Cir.1999).  "A criminal defendant's exercise of this right cannot unduly hinder the fair, efficient and orderly administration of justice."  *United States v. Panzardi Alvarez*, 816 F.2d 813, 816 (1st Cir.1987) (citations omitted).  "The sixth amendment, however, does not countenance the mechanistic application of a rule that permits a district court, without articulating any grounds, to deny a defendant his right to counsel of choice."  *Id.* at 817.   The *Panzardi* court further stated:

> The mere fact that a defendant seeks to retain an out-of-state attorney does not hinder the efficacious administration of justice.   His choice of counsel must be respected unless it would unreasonably delay proceedings or burden the court with counsel who was incompetent or unwilling to abide by court rules and ethical guidelines.

In *Gonzalez-Lopez*, the Supreme Court made clear that a wrongful denial of a defendant's Sixth Amendment right to have counsel of his choice is not conditional on whether defendant's right to a fair trial was prejudiced or whether the denial of defendant's right to counsel of his choice constituted "harmless error."  The Court, however, also made clear that its decision did not cast any doubt or place any qualification on its previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them.  126 S.Ct. at 2565.  As the Court stated:

> We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *Id.,* at 163-164, 108 S.Ct. 1692, and against the demands of its calendar, *Morris v. Slappy,* 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).   The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  *Wheat, supra,* at 160, 108 S.Ct. 1692.

*Id.*, 126 S.Ct. at 2565-66.

In *United States v. Ensign*, 491 F.3d 1109, 1114 (9th Cir. 2007), discussed more fully herein, the court noted that its previous decisions in *Walters* and *United States v. Ries*, 100 F.3d 1469 (9th Cir. 1996), were consistent with *Gonzalez-Lopez*.

5

In *United States v. Bennett*, 2006 WL 2793170 (D. Hawaii 2006), the court affirmed the magistrate judge's order disqualifying Mr. Stilley, in part, on the grounds that Mr. Stilley stated in his verified petition that he was a member in good standing of the Arkansas bar and was not currently suspended.  The court found that this statement was misleading because Mr. Stilley failed to disclose in his petition that he had, in fact, been suspended by the Arkansas disciplinary committee, but that the suspension was stayed while he appealed the decision to the Arkansas Supreme Court.  Thus, whether or not Mr. Stilley's license to practice law in Arkansas was in "good standing" was not dispositive to the court's decision because it was entitled to conclude that his failure to disclose his suspension "strongly suggests through his behavior that he will neither abide by the court's rules and practices, thus impeding the 'orderly administration of justice' - nor be readily answerable to the court." *Bennett* at *4. Additionally, the court noted that although Mr. Stilley was appealing the Arkansas disciplinary committee order, "the Arkansas ruling now in the record demonstrates that he is not the kind of attorney that this court would admit *pro hac vice.*  His prior conduct demonstrates that he is likely to file frivolous papers that would unreasonably delay these proceedings and that he is 'unwilling to abide by court rules and ethical guidelines.'  *Walters*, 309 F.3d at 591."  *Bennett* at *5.

The district court in *Bennett* was further concerned by Mr. Stilley's and the defendant's unsupported accusations that the Government had engaged in "judge shopping" by the manner in which the motion to disqualify was assigned and that the magistrate judge was not "even handed."  The court found that these unsupported accusations were similar to the type of conduct for which Mr. Stilley had previously been sanctioned and disciplined by the Arkansas court.  The court also found that Mr. Stilley's conduct was not isolated or infrequent and noted that the district court for the District of Arizona had also denied his application based on his numerous ethical issues, including various sanctions and discipline imposed on him.  *Id.  Bennett* further concluded:

> Finally, the stay of Stilley's suspension could be lifted before trial in this matter is completed, and the result could be disruption of this court's proceedings. Although Stilley does not think that his appeal will be decided soon, that does not necessarily mean that his Arkansas appeal will be decided after trial in this matter. Trials are often continued and, even if trial were to occur before Stilley's appeal is decided, defendants are often sentenced months after the trial has ended. If Bennett were convicted, Stilley's appeal could be decided against him before Bennett's sentencing.

1
            Thus, a delay in this case is certainly a possibility as long as Stilley is
counsel of record.

2

3 *Bennett* at \*5.

4       In *Stilley v. Bell*, 155 Fed.Appx. 217 (6th Cir. 2006), the Sixth Circuit, in an unpublished

5 decision, affirmed a November 2003 decision of the district court denying Mr. Stilley's petition for pro

6 hac vice admission to represent a defendant in a criminal case.  The Sixth Circuit upheld the district

7 court's decision on the merits based on the court's findings of Mr. Stilley's "unprecedented number of

8 violations of the Model Rules of Professional Conduct, which culminated in a Caution, two Reprimands

9 and a thirty (30) day suspension."  The disciplinary matters referred to apparently occurred in 2001 or

10 prior thereto.  The court also noted that the Arkansas Supreme Court had stricken Mr. Stilley's brief in

11 *White v. Priest.*  The Sixth Circuit rejected Mr. Stilley's argument that his history of ethical violations in

12 Arkansas did not warrant his disqualification because the violations were either unfair or petty.  The

13 court stated: "As the district court noted, 'petitioner agreed that it is not the function of this panel to re-

14 evaluate the merits of the disciplinary actions taken against him in his home jurisdiction."  155

15 Fed.Appx. at \*6.  The court also noted that Stilley did not appeal the findings in those matters and that

16 they should not be relitigated before the United States courts in regard to the issue of his

17 disqualification.  *Id.*  The court also stated that the fact that other federal district courts had admitted

18 Mr. Stilley to practice did not compel the conclusion that the court in the Western District of Michigan

19 abused its discretion in denying Mr. Stilley's petition to practice before that court.

20       In its Reply (#46), the Government has also cited the District of Arizona's decision in *United*

21 *States v. Ensign*, CR-03-344-PHX-MHM, Order 7, (D.Ariz. April 19, 2005), and the Ninth Circuit's

22 subsequent decision in *United States v. Ensign*, 491 F.3d 1109 (9th Cir. 2007), in support of its argument

23 that the Court should disqualify Mr. Stilley from *pro hac vice* representation in this case.  The decisions

24 in *Ensign* are partially distinguishable from this case and others in which Mr. Stilley has been denied

25 permission to appear pro hac vice as counsel for a defendant.  In *Ensign*, Mr. Stilley was initially

26 appointed prior to trial  as co-defense counsel and then as lead defense counsel for defendant pursuant

27 to the Criminal Justice Act ("CJA").   Shortly before trial, the court revoked Mr. Stilley's appointment

28 as CJA counsel after his history of ethical violations in Arkansas were called to the court's attention and

7

1  Mr. Stilley failed to properly address those issues in response to the court's inquiries.  After the case

2  proceeded to trial, the defendant informed the court that she had privately retained Mr. Stilley as her

3  counsel and requested that he be permitted to appear as her counsel, *pro hac vice.*  In denying this

4  request, the district court gave three reasons: (1) its concerns regarding Stilley's ethical fitness; (2) that

5  some of the pleadings filed by Stilley during the period he was CJA counsel appeared to be improper;

6  and (3) the court's concerns with the timeliness of the request because trial had started two weeks

7  earlier and opening statements were scheduled to begin immediately.

8        On appeal, the Ninth Circuit held that the order revoking Mr. Stilley's appointment as CJA

9  counsel did not violate defendant's Sixth Amendment rights because "the right to counsel of choice

10  does not extend to defendants who require counsel to be appointed for them."  *United States v. Ensign*,

11  491 F.3d at 1113, quoting *United States v. Gonzalez-Lopez*, 126 S.Ct at 2565.  The subsequent denial of

12  defendant's request to have Mr. Stilley appear as her privately retained counsel did implicate

13  defendant's Sixth Amendment rights.  In holding that the district court's decision was proper, the court

14  stated:

15        All of the trial court's concerns were justified.  Its concerns with Stilley's
       ethics were reasonably based not only on pending disciplinary
16        proceedings in Arkansas, but also on Stilley's failure to state in his *pro
       hac vice* application that he was subject to pending disciplinary
17        proceedings and on his failure to directly address those proceedings when
       so requested.  This, combined with Stilley's failure to cure his contempt
18        of the Arkansas court orders, raised concerns that he would "neither abide
       by the court's rules and practices," nor "be readily answerable to the
19        court." (citation omitted.)

20  *Ensign*, 491 F.3d at 1115.

21        The court also found that Mr. Stilley had filed numerous motions of dubious merit which raised

22  a reasonable concern that Stilley might consider obstruction to be part of the defense he would proffer

23  for the defendant.  Finally, the court held that there were reasonable concerns that the request to have

24  Mr. Stilley serve as defendant's counsel in the midst of the trial would likely have engendered

25  considerable confusion and delay that could have interfered with the co-defendants' right to a fair trial.

26  *Id.*

27        Unlike the circumstances in *Bennett* and *Ensign*, Mr. Stilley disclosed the Arkansas order

28  suspending his license to practice law in his verified petition to this Court.  *Verified Petition* (#31),

8

1   attachment, p. 3.  Mr. Stilley also has not filed any motions or pleadings in this case, other than his

2   response to the Government's motion to disqualify.  The Court, therefore, does not have a record of Mr.

3   Stilley's conduct in this case on which to base a judgment whether he will abide by the Court's rules

4   and practices.  The issue before this Court, therefore, is whether the Arkansas Supreme Court's decision

5   affirming the  order suspending his license to practice law for a period of six months, which has been

6   stayed pending his petition to the United States Supreme Court, and his record of other disciplinary

7   orders or proceedings in Arkansas warrant denial of his petition.  The fact that two other federal district

8   courts found that Mr. Stilley was less than candid with them in disclosing the status of his license to

9   practice law is also a factor that this Court may consider, although, again, Mr. Stilley has not engaged in

10  such conduct regarding his application in this Court.

11         Defendants' Response (#42) argues that this Court should not consider or accord weight to the

12  order suspending Mr. Stilley's license to practice law in Arkansas because the order was obtained in

13  violation of his right to due process of law and is void.  Defendant and Mr. Stilley rely on *In re Ruffalo*,

14  390 U.S. 544, 88 S.Ct. 1222 (1968), in which the Court reversed an order by the court of appeals

15  reciprocally disbarring an attorney from practicing before that court based on his disbarment in

16  Pennsylvania.  The Court stated that, although admission to practice before a federal court is derivative

17  from membership in a state bar, disbarment by the state does not result in automatic disbarment by the

18  federal court.  The Court further stated that "one of the conditions this Court considers in determining

19  whether disbarment by a state should be followed by disbarment here is whether 'the state procedure

20  from want of notice or opportunity to be heard was wanting in due process.' *Selling v. Radford*, 243

21  U.S. 46, 51, 37 S.Ct. 377, 379, 61 L.Ed. 585."  *Ruffalo*, 88 S.Ct. at 1224.  The Court found that the

22  Sixth Circuit based its disbarment order on a count in the state disbarment order which was first raised

23  by amendment during the disbarment hearing and as to which the attorney was denied notice and an

24  opportunity to be heard.  Because the state disbarment order violated the attorney's right to due process

25  of law, the Court held that it could not be a valid ground for the federal court to disbar the attorney.

26         In *In re Kramer*, 282 F.3d 721, 724-725 (9th Cir. 2002), the Ninth Circuit followed the principles

27  in *Ruffalo* and *Selling, supra*, regarding a federal court's imposition of reciprocal discipline based on a

28  state court order disbarring or suspending an attorney from the practice of law.  *Kramer* states:

As we explained in *Kramer III,* under *Selling,* a federal court's imposition of reciprocal discipline on a member of its bar based on a state's disciplinary adjudication is proper unless an independent review of the record reveals:  (1) a deprivation of due process;  (2) insufficient proof of misconduct;  or (3) grave injustice which would result from the imposition of such discipline.  *Kramer III,* 193 F.3d at 1132 (citing *Selling,* 243 U.S. at 50-51, 37 S.Ct. 377).   As a threshold issue, we must determine who bears the burden of proof under *Selling,* and what, exactly, that burden is.

While this court has not yet spoken on the issue, those courts that have generally have concluded that in reciprocal discipline cases, it is the respondent attorney's burden to demonstrate, by clear and convincing evidence, that one of the *Selling* elements precludes reciprocal discipline. *See, e.g., In re Calvo,* 88 F.3d 962, 967 (11th Cir.1996) ("The burden is on the disbarred attorney to show good cause why he should not be disbarred, and the district court is not required 'to conduct a *de novo* trial in the first instance of [the attorney's] fitness to practice law.' ...Instead, it must determine whether 'the record underlying the predicate state disbarment ... reveal[s] the kind of infirmities identified in *Selling.*'"); *In re Hoare,* 155 F.3d 937, 940 (8th Cir.1998); *In re Friedman,* 51 F.3d 20, 22 (2d Cir.1995) ("As *Selling* makes clear, it was Friedman's burden to demonstrate by clear and convincing evidence that ... the New York procedures were wanting.").   We find these cases persuasive, and we agree.

*See also Gadda v. Ashcroft*, 377 F.3d 934, 943 (9th Cir. 2004).

The Court, here, is not called upon to impose reciprocal discipline on Mr. Stilley.  Rather, it is required to determine whether he should be admitted *pro hac vice* to represent Defendant in this case.  The standards for exercising that discretion are not the same as they would be if the court was considering the revocation of a previous order granting *pro hac vice* admission.  *See United States v. Collins*, 920 F.2d 619, 626 (9th Cir. 1990).  As noted above, however, the granting or denial of a petition to admit to practice *pro hac vice* in a criminal case carries Sixth Amendment implications.  Although the cases cited by Defendant/Mr. Stilley and the Government do not directly address the point, the Court concludes that it is should consider whether the state disciplinary proceedings suffer from the type of defects identified in *Selling* and *Kramer, supra*.  Stated otherwise, if the attorney demonstrates by clear and convincing evidence that his license was suspended in violation of his right to due process, the Court should not consider such a suspension sufficient grounds for denying his petition for *pro hac vice* admission.

Unlike *Ruffalo*, Mr. Stilley has not presented clear and convincing evidence that he was denied notice or an opportunity to be heard in the Arkansas disciplinary proceedings that resulted in the order

10

1    suspending his license to practice law.  In *White v. Priest*, 73 S.W.3d 572, 579-581 (Ark. 2002), the

2    Arkansas Supreme Court referred Mr. Stilley to that state's professional conduct committee based on

3    allegedly disrespectful and intemperate statements made by him in a brief to the court.  In Defendant's

4    Response (#42) in this case, Mr. Stilley appears to argue that the Arkansas Supreme Court referred him

5    to the discipline committee because he sought to have the justices recuse themselves from hearing the

6    issue regarding the ballot initiative.  However, this Court's reading of that opinion, as well as the

7    subsequent order affirming Mr. Stilley's suspension from the practice of law, shows that the Court

8    referred him to the professional conduct committee based on his statements in his brief which called

9    into question the honesty of the supreme court justices. That state's professional conduct committee

10   served a formal complaint on Mr. Stilley alleging that his conduct violated the rules of professional

11   conduct.  Stilley denied the charges in the complaint, which was then reviewed by a panel of the

12   committee, which issued a confidential decision finding that he violated the rules of professional

13   conduct.  Stilley requested a public hearing before a second panel which was then conducted and

14   resulted in a finding that Stilley violated four provisions of the Model Rules of Professional Conduct

15   and the suspension of his law license for six months.  Stilley appealed from the committee's decision

16   which then stayed his suspension pending his appeal to the Arkansas Supreme Court.

17         Stilley argues that the Arkansas Supreme Court violated his due process rights by improperly

18   quashing his subpoenas requiring supreme court justices to appear at the disciplinary hearing.  The

19   Arkansas Supreme Court quashed the subpoenas on the grounds that the Court's reasons for referring

20   Mr. Stilley to the professional conduct committee for possible discipline were set forth in the Court's

21   opinion in *White v. Priest*, 73 S.W.3d 572 (Ark. 2002), which cited the statements in his appellate brief

22   in that case.  The Court held that there was no proper basis for Stilley to, in effect, look behind the

23   Court's opinion in *White v. Priest* to cross-examine the justices' reasons for referring him to the

24   disciplinary committee.  The Arkansas Supreme Court also rejected argument that he was denied due

25   process because the justices of the Supreme Court were his accusers and had an interest in the outcome

26   of his case and therefore should have been precluded from reviewing his appeal of the committee's

27   suspension order.  The Arkansas Supreme Court considered and rejected these arguments in its June 21,

28   2007 opinion affirming the suspension order.  *Defendant's Response (#42), Exhibit "5."*  First, the

1  Arkansas Court noted that the executive director of the professional conduct committee had the

2  independent discretion to decide whether to proceed and process the complaint.  Second, the justices did

3  not attend the disciplinary hearing and did not have any other involvement in the proceeding that

4  resulted in the committee's imposition of the six month suspension.  The Court also held that the

5  alleged grounds for misconduct existed under Arkansas law prior to Mr. Stilley's alleged violations.

6  The Arkansas Court further held that in reviewing the committee's decision on appeal, i.e., whether due

7  process was afforded and whether the decision was supported by the record, the justices were not

8  required to recuse themselves.

9      Although the suspension of Mr. Stilley's license to practice law has been stayed pending a

10  petition to the United States Supreme Court, the Arkansas Supreme Court upheld the committee's

11  conclusions that Mr. Stilley violated the rules of professional conduct and that his conduct warrants a

12  six month suspension. While this Court cannot rule out the possibility that the United States Supreme

13  Court will grant Mr. Stilley's petition and entertain the substantive merits of his appeal, Mr. Stilley has

14  not established to this Court by clear and convincing evidence that the Arkansas disciplinary

15  proceedings and the Arkansas Supreme Court's opinion affirming the suspension of his license to

16  practice law demonstrate (1) a deprivation of his right of due process; (2) that there is insufficient proof

17  of misconduct; or (3) that a grave injustice which would result from the imposition of such discipline

18  or, in this case, a denial of his petition for *pro hac vice* admission.  *See Kramer, supra.*  The Court,

19  therefore, concludes that the fact that Mr. Stilley has been suspended from the practice of law for a

20  period of six months, which suspension will likely become effective if and when his petition to the

21  United States Supreme Court is denied, is a matter to be properly considered by the Court in deciding

22  whether his petition for *pro hac vice* admission should be granted.

23      Were this Court to grant Mr. Stilley's *pro hac vice* application, the Court would likely be

24  required to revisit this issue if his petition for certiorari is denied and the stay of his suspension is lifted.

25  This would likely result in an order revoking his admission to practice in this court based on that

26  suspension.  As the court in *Bennett* stated:

27      [][T]he stay of Stilley's suspension could be lifted before trial in this
       matter is completed, and the result could be disruption of this court's
28      proceedings. . . . Trials are often continued and, even if trial were to occur

1   before Stilley's appeal is decided, defendants are often sentenced months
2   after the trial has ended. If Bennett were convicted, Stilley's appeal could
    be decided against him before Bennett's sentencing. Thus, a delay in this
3   case is certainly a possibility as long as Stilley is counsel of record.

4   This Court, therefore, also concludes that the granting of Mr. Stilley's petition for *pro hac vice*

5   would likely cause unreasonable delay in these proceedings if, as appears probable, Mr. Stilley's

6   suspension from the practice of law hereafter becomes effective and the Court is then required to

7   consider a motion to disqualify or revoke his admission.  The Court, therefore, concludes that the

8   Arkansas Supreme Court's opinion affirming the suspension of Mr. Stilley's license to practice law

9   provides sufficient grounds for this Court to deny his verified petition.

10   In addition, Mr. Stilley had not addressed the other issues raised by the Government's Motion to

11   Disqualify (#35) and by his own verified petition to practice in this case.  Contrary to Mr. Stilley's

12   argument at the hearing in this matter, the Government's motion raised as grounds for disqualification

13   or denial of his petition, his other record of disciplinary proceedings in Arkansas.  The Government's

14   motion cited the decisions by the district court in Hawaii and the Sixth Circuit's decision revoking or

15   denying his *pro hac vice* admission based on his history of ethical misconduct in Arkansas.  This Court

16   also concludes that Mr. Stilley's extensive record of ethical violations supports the conclusion that he is

17   unwilling to abide by court rules and ethical guidelines.  This history, combined with the Arkansas

18   Supreme Court's opinion affirming his suspension from the practice of law, warrants this Court in

19   concluding that his petition should be denied.  Accordingly,

20   **IT IS HEREBY ORDERED** that Oscar Stilley's Verified Petition for Permission to Practice In

21   This Case Only By Attorney Not Admitted to the Bar of This Court and Designation of Local Counsel

22   (#31) is **denied**, and the Government's Motion to Disqualify Oscar Stilley, Esq. From Pro Hac

23   Representation (#35) is **granted.**

24   DATED this 11th day of October, 2007.

25

26   GEORGE FOLEY, JR.
     United States Magistrate Judge

27

28

13